**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| BRIAN FRANK JONES,<br><br>Plaintiff,<br>vs.<br><br>ROBERT BARRA,<br><br>Defendant. | ) | Case No.: 2:15-cv-00172-GMN-GWF<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 22), filed by Defendant Robert Barra ("Defendant"). Plaintiff Brian Frank Jones ("Plaintiff") filed a response, (ECF No. 25), and Defendant filed a reply, (ECF No. 28).

Also before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 23). Defendant filed a response, (ECF No. 24), and Plaintiff filed a reply, (ECF No. 26). For the reasons set forth herein, both motions are **DENIED**.

## I. BACKGROUND

This case arises from a dispute over whether a $775,000 monetary transfer was an investment or a loan. Plaintiff and Defendant are former business associates. (Compl. ¶ 9, ECF No. 1). Plaintiff claims that on August 20, 2007, in accordance with a written promissory note, he loaned Defendant $700,000 to be repaid within three years. (*Id.* ¶ 13). Plaintiff further claims that he loaned Defendant an additional $75,000 on February 7, 2008, and the parties subsequently entered into an amended and restated promissory note to reflect this additional amount. (*Id.* ¶¶ 14, 15). According to Plaintiff, the parties signed this promissory note in a face-to-face meeting on November 11, 2009, at a train station in Tuckahoe, New York. (Aff. Jones ¶ 8, Ex. 2 to Pl.'s MSJ, ECF No. 23-2). Plaintiff claims both promissory notes are

currently within Defendant's possession, and "Defendant has refused to provide a copy to Plaintiff." (*Id.*).

Defendant argues that no such loan agreement ever existed, and instead the $775,000 was an investment in the company CryptoMetrics, Inc. ("CryptoMetrics"). (Aff. Barra ¶ 6, Ex. 11 to Def.'s MSJ, ECF No. 22-11). At the time of the alleged agreement, Defendant was a co-founder and co-CEO of CryptoMetrics. (*Id.* ¶ 5). According to Defendant, Plaintiff agreed to purchase a portion of Defendant's stock in CryptoMetrics, which was to be transferred once the company went public. (*See* Def.'s Resp. 3:1–5, ECF No. 24). Defendant claims it was understood that Plaintiff would provide his investment funds to Defendant directly, and Defendant would then use that money to fund the company on an as needed basis. (Aff. Barra ¶ 6, Ex. 11 to Def.'s MSJ). Thus, Defendant argues, the $700,000 and $75,000 checks Plaintiff gave to Defendant were investments made in accordance with this understanding and with no expectation of the money being repaid as a loan. (*See* Def.'s MSJ 3:18–26, ECF No. 22).

Between March 2008 and February 2009, Defendant returned a total of $227,500 to Plaintiff in nine separate checks. (Checks & Bank Statements, Ex. 3 to Def.'s MSJ, ECF No. 22-3). Plaintiff argues this money was returned as part of repayments on the loan agreement. (Pl.'s MSJ 2:16–17, ECF No. 23). In contrast, Defendant argues the money was returned as a favor after Plaintiff requested the money back for personal reasons. (Def.'s MSJ 9:15–16). According to Defendant, he returned the money because the two had a "trusting" relationship. (Def.'s Resp. 13:1–2).

Over the next few years, Plaintiff and Defendant remained in regular contact with each other regarding various business matters. (*See* Business Emails, Ex. 5 to Def.'s MSJ, ECF No. 22-5). In Fall 2013, Plaintiff brought up the alleged loan agreement in an email exchange with Defendant and requested a copy of the promissory note. (*See* Agreement Emails, Ex. 3 to Pl.'s

MSJ, ECF No. 23-3). Plaintiff alleges that Defendant acknowledged the agreement, but thereafter refused to provide a copy. (*See* Pl.'s MSJ 4:10–23).

On January 30, 2015, Plaintiff filed a Complaint alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (*See* Compl.). Defendant filed an Answer on August 12, 2015, denying the existence of the promissory note. (*See* Answer, ECF No. 19). On October 12, 2015, both parties filed Motions for Summary Judgment, (ECF Nos. 22, 23).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

### A. Defendant's Arguments

#### 1. Plaintiff Failed to Establish Existence of Promissory Note

Defendant argues that he is entitled to summary judgment because Plaintiff has failed to demonstrate that a promissory note exists between the parties. (Def.'s MSJ 6:9–10). In response, Plaintiff asserts that the written promissory note exists, but the only copy is being withheld by Defendant. (Aff. Jones ¶ 8, Ex. 2 to Pl.'s MSJ). As a general rule, the loss or destruction of a written agreement does not render that agreement unwritten. *See Khan v. Bakhsh*, 306 P.3d 411, 413 (2013); *see also Phillips v. Dignified Transition Solutions*, No. 2:13–CV–02237–GMN, 2014 WL 4294972, at *4 (D. Nev. Aug. 28, 2014) (finding the defendants' alleged refusal to provide the plaintiff with the written agreement did not render the agreement unwritten.). Absent the original document, secondary evidence may be used to establish the existence of the debt. *A.I. Credit Corp. v. Gohres*, 299 F. Supp. 2d 1156, 1159 (D. Nev. 2004).

Here, the Court finds Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to the existence of the promissory note. In particular, the Court notes the October 14, 2013 email exchange between the parties, in which Defendant references a "financial agreement" entered into with Plaintiff in 2007. (*See* Agreement Emails, Ex. 3 to Pl.'s MSJ). Additionally, the Court notes the declaration of Michael Vital, co-founder of CryptoMetrics, in which he states that Defendant told him about the existence of a loan with Plaintiff. (*See* Aff. Vitale ¶ 7, Ex. 4 to Pl.'s MSJ, ECF No. 23-4). The Court also notes the repayment of $227,500 to Plaintiff between March 2008 and February 2009, which Plaintiff claims were repayments on the loan agreement. (*See* Checks & Bank Statements, Ex. 3 to Def.'s MSJ). Based on the evidence in the record, the Court finds summary judgment on this issue to be inappropriate.

**2. Statute of Frauds Bars Recovery**

Defendant argues that "[s]ince Plaintiff cannot show the existence of the written agreement alleged in the Complaint, the alleged contract is void pursuant to the statute of frauds." (Def.'s MSJ 11:19–20). As explained above, the Court finds that Plaintiff has raised a genuine issue of material fact as to the existence of the written promissory note. Accordingly, Defendant's statute of frauds argument is rejected.

**B. Plaintiff's Arguments**

**1. Summary Judgment on Breach of Contract Claim**

Plaintiff argues that he is entitled to summary judgment on his breach of contract claim because "no real, substantial factual dispute exists that Mr. Barra breached the withheld Promissory Note." (Pl.'s MSJ 14:23–24). To reiterate, summary judgment is only proper when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

Here, the Court finds a rational trier of fact could reasonably determine that the monetary transfer was an investment rather than a loan. In particular, the Court notes the Subscription Agreement to purchase stock signed by Plaintiff on March 16, 2007. (*See* Subscription Agreement, Ex. 1 to Def.'s MSJ, ECF No. 22-1). While Plaintiff correctly points out that CryptoMetrics never executed this document, a jury could reasonably find the document relevant to establishing Plaintiff's intention to invest in the company. Furthermore, while Plaintiff has presented sufficient evidence to survive Defendant's summary judgment motion, Plaintiff's evidence is far from conclusive. Notably, the record is mostly devoid of any written documentation that Plaintiff ever discussed the alleged promissory note with Defendant or requested payments on the alleged loan. The only written reference to the alleged promissory note occurred in an email conversation roughly six years after the $775,000 transfer. Accordingly, much of Plaintiff's argument relies on testimonial evidence, which a

jury could choose to disbelieve. Plaintiff is therefore not entitled to summary judgment on his breach of contract claim.

**2. Summary Judgment on Bad Faith Claim**

Plaintiff argues that he is entitled to summary judgment on his breach of the implied covenant of good faith and fair dealing claim because "the parties' continued references to repayments and the actual repayments themselves render it beyond genuine dispute that [Plaintiff] expected repayment in full of his $775,000." (Pl.'s MSJ 15:15–17). In Nevada, every contract imposes upon each party a duty of good faith and fair dealing in its performance and execution. *Turk v. Tig Ins. Co.*, 616 F. Supp. 2d 1044, 1053 (D. Nev. 2009). A breach occurs when "the terms of a contract are literally complied with, but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id.*

Here, Defendant contests both the existence of the loan agreement and the purpose for the $227,000 repayments. Specifically, Defendant asserts that the repayments were made because Plaintiff requested a portion of the investment money back for personal reasons. (*See* Def.'s MSJ 9:15–16). The Court finds that a rational trier of fact could find for Defendant on this issue. *See Matsushita*, 475 U.S. at 587. Accordingly, Plaintiff is not entitled to summary judgment on his breach of covenant of good faith and fair dealing claim.

**3. Judicial Restoration of the Promissory Note**

Plaintiff argues that the record demonstrates his entitlement to an instrument to replace the withheld promissory note. (*See* Pl.'s MSJ 16:9–12). However, given the genuine issues of material fact detailed above, the Court denies Plaintiff's summary judgment claim for judicial restoration of the promissory note.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 22), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 23), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order by November 1, 2016.

**DATED** this _29__ day of September, 2016.

________________________________

Gloria M. Navarro, Chief Judge
United States District Judge